**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| JOELEAN R. CALVERT, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>COMMISSIONER OF THE SOCIAL )<br>SECURITY ADMINISTRATION, )<br>)<br>Defendant. ) | Case No. CIV-10-813-D |

## REPORT AND RECOMMENDATION

Plaintiff, Ms. Joelean R. Calvert, seeks judicial review of a denial of disability insurance benefits by the Social Security Administration. This matter has been referred for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

### I.   Procedural Background

Ms. Calvert filed her application for disability insurance benefits on June 22, 2005, alleging disability beginning on October 22, 2004. The Social Security Administration denied her application initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. *See* Administrative Record [Doc. #15] (AR) at 12-21. The Appeals Council denied Ms. Calvert's request for review. AR 4-7. This appeal followed.

## II. The ALJ's Decision

The ALJ followed the sequential evaluation process required by agency regulations. *See Fisher-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. The ALJ first determined that Ms. Calvert had not engaged in substantial gainful activity since October 22, 2004. AR 17. At step two, the ALJ determined that Ms. Calvert had the following severe impairments: residual effects of surgery on both knees as well as degenerative joint disease of her knees. AR 17. At step three, the ALJ found that Ms. Calvert's impairments did not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 17.

The ALJ next determined Ms. Calvert's residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of sedentary work.

AR 17. At step four, the ALJ concluded that Ms. Calvert was able to perform her past relevant work as legal secretary. AR 20.

## III. Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is

overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## IV.   Issues Raised on Appeal

Ms. Calvert's representative[1] contends that the ALJ erred in (1) failing to consider the effect of obesity on Ms. Calvert's other impairments; (2) failing to apply the factors set forth in 20 C.F.R. § 404.1529(c) to Ms. Calvert's subjective allegations; (3) failing to properly consider the opinions of Ms. Calvert's treating physicians; (4) failing to include in the RFC specific limitations identified by Ms. Calvert's treating physicians; (5) failing to properly analyze Ms. Calvert's pain symptoms; and (6) failing to properly analyze Ms. Calvert's credibility.

---

[1] Plaintiff's Reply Brief contains the statement that Ms. Calvert is now deceased. *See* Reply Brief at 3. No cause or date of death is mentioned, nor is there any request for any procedural change relating to Plaintiff's death.

**V.     Analysis**

    **A.     The ALJ's Failure to Consider Effects of Obesity**

The first issue raised in this appeal concerns the ALJ's failure to consider the effects of Ms. Calvert's obesity in combination with her other impairments.

Social Security Ruling (SSR) 02-1p requires an ALJ to consider the effects of obesity when assessing RFC because "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." Titles II & XVI: Evaluation of Obesity, SSR 02-1p, 2000 WL 628049, at *1 (Sept. 12, 2002). This evaluation is particularly important when a claimant has both musculoskeletal impairments and obesity. At each step of the sequential evaluation, whether determining that a claimant with obesity does or does not have a listing-level impairment or combination of impairments, assessing a claimant's RFC, or determining what jobs, if any, a claimant could perform, an ALJ must consider the cumulative effects of obesity and the claimant's other impairments. There is no specific body weight that, standing alone, makes obesity a "severe" impairment. Nevertheless, as the ruling states, a claimant's weight and body mass index (BMI), combined with musculoskeletal impairments, can make an otherwise mild or moderate condition severe. In this case, the ALJ determined that the residual effects of surgical procedures on both of Ms. Calvert's knees as well as the degenerative joint disease of her knees were severe impairments. These impairments are precisely of the type which make an ALJ's consideration of obesity so important.

The Commissioner contends that the ALJ did not need to discuss Ms. Calvert's obesity because she did not specifically include obesity as a severe impairment in her application for benefits or when she testified at the administrative hearing. But disability hearings are nonadversarial, and the ALJ has a duty to make sure the record is complete. *See Wall v. Astrue* at 1062-1063.

In this case, Ms. Calvert was examined by an agency physician, Dr. Nathan Lasiter, who noted that Ms. Calvert stood only 60" (5' 1/4") tall and weighed 238 pounds. Ms. Calvert was present at the administrative hearing, and the ALJ necessarily observed and could assess the obvious extent of her obesity. Additionally, numerous medical records included diagnoses of obesity. This evidence was sufficient to trigger the ALJ's duty to consider Ms. Calvert's obesity in combination with her other impairments, even though she did not specifically claim obesity as an impairment in her application for benefits. *See Stemple v. Astrue*, 475 F. Supp. 2d 527, 539 (D. Md. 2007) (references to weight in record sufficient to alert ALJ despite fact that claimant did not specifically claim obesity as an impairment); *Stack v. Barnhart*, 327 F. Supp. 2d 1175, 1178 (C.D. Cal. 2004) (ALJ breached his duty by failing to consider effects of obesity on other impairments, even though obesity was not mentioned at the hearing).

On remand, the Commissioner should consider the effect of obesity on Ms. Calvert's other impairments.

### B.     The ALJ's Consideration of Symptoms and Credibility

The second, fifth and sixth points of error challenge the ALJ's failure to properly consider the factors set out in 20 C.F.R. § 404.1529(c), failure to conduct a proper analysis of her pain, and failure to properly analyze her credibility.

The agency acknowledges that "symptoms sometimes suggest a greater severity of impairment than can be shown by medical evidence alone." 20 C.F.R. § 404.1529(c)(3). The regulations direct consideration of the following factors:

> (i) Daily activities;
>
> (ii) The location, duration, frequency, and intensity of pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms;
>
> (v) Treatment, other than medication for relief of pain or other symptoms;
>
> (vi) Any measures used to relieve pain or other symptoms; and
>
> (vii) Other factors concerning functional limitations and restrictions due to pain or other symptoms.

20 CFR § 404.1529(c)(3). The ALJ listed these factors, *see* AR 18, but he failed to adequately discuss the relevance of the factors to Ms. Calvert's case. For example, the ALJ quoted one of Dr. Dye's medical notations that "she [Ms. Calvert] was able to get out and work in her yard." AR 19. The quotation might have been an indication of Ms. Calvert's ability to work, but for the fact that the ALJ quoted only a portion of the notation:

>   she was able to get out and work in her yard[,] something she has not done in over 4 years due to her bad knees[,] and since this day she has had increase in back pain[.]

AR 212.[2]  Without discussing Ms. Calvert's daily activities, the ALJ simply concluded that there "is no indication that his [sic] daily activities have been curtailed to an extent that would suggest an inability to engage in all work activity." AR 20.

Additionally, the ALJ failed to conduct a proper analysis of Ms. Calvert's credibility or her subjective complaints of pain. The Tenth Circuit Court of Appeals recently restated the salient points a court must consider when reviewing credibility determinations:

>   "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston [v. Bowen]*, 838 F.2d 1125, 1133 [(10th Cir. 1988)] (footnote omitted); *see also Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (ALJ "must articulate specific reasons for questioning the claimant's credibility" where subjective pain testimony is critical); *Williams [ex rel.] Williams v. Bowen*, 859 F.2d 255, 261 (2d Cir.1988) ("failure to make credibility findings regarding . . . critical testimony fatally undermines the [Commissioner's] argument that there is substantial evidence adequate to support his conclusion that claimant is not under a disability").

---

[2]The ALJ's discussion of the evidence from Dr. Dye is inconsistent. First, the ALJ states that "[t]here is no mention of back problems or venous insufficiency in these [Dr. Dye's] records." AR 19. He then states that the "record outside the statements of Dr. Dye does not show a history of treatment for back pain, and there is no history of complaints for such pain." AR 20. On remand, these inconsistencies should be reconciled.

*Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (*quoting Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). The Court also restated the process an ALJ should use in evaluating a claimant's subjective allegations of pain:

> The framework for the proper analysis of Claimant's evidence of pain is set out in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

*Id.* at 1144-1145 (internal quotations and citations omitted). In determining whether a claimant's subjective complaints are credible, the ALJ should consider such evidence as:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Id.* at 1145 (internal quotation and citations omitted).

In this case, Ms. Calvert's subjective testimony regarding her pain is critical to the outcome of her case; yet the ALJ did not apply the *Luna* factors to Ms. Calvert's allegations of pain. On remand, the Commissioner should reconsider the severity of Ms. Calvert's pain using the factors set forth in *Luna* and the regulations. The Commissioner should also link his credibility findings to substantial evidence rather than make conclusory statements in the guise of findings.

### C.     The ALJ's Consideration of Information from Treating Physician

In her third and fourth points of error, Ms. Calvert challenges the ALJ's consideration of information from her treating physician including specific limitations identified by the treating physician, Dr. Dye.

A medical opinion from a treating source is generally entitled to more weight than the opinion of a non-treating source. *See* 20 C.F.R. §§ 404.1527(d)(2). "Medical opinions" are defined as:

> statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.

20 C.F.R. §§ 404.1527(a); 416.927(a).

Using a sequential analysis to evaluate the opinions of treating sources, an ALJ must give the opinion of an acceptable treating source controlling weight if it is both well-supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If an opinion fails to satisfy either of these conditions, the ALJ must then determine what weight, if any, should be given to the opinion by considering (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a

whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id.* at 1301. The ALJ must set forth specific legitimate reasons for completely rejecting an opinion of a treating source. *Id*.

In this case, Dr. Dye offered his medical opinion regarding Ms. Calvert's impairments:

> Mrs. Rohna Calvert has been a patient of mine for 10 years and suffers from numerous medical problems. Rhona has suffered longstanding low back pain related to Degenerative Disc Disease and Degenerative Joint Disease of the Lumbosacral Spine. She also has longstanding Venous Insufficiency of both legs that results in swelling exacerbated by period of standing or sitting with her feet down. Mrs. Calvert also has Degenerative Joint Disease in both hands and knees as she has had recent joint replacement in her knees as well.
>
> Rhona Calvert has been prescribed numerous medications to control symptoms referable to her above problems, many of these medications have side effects such as sedation and lethargy and place limitations on her concentration and driving ability as well.
>
> Due to the above illnesses listed and based on their poor longterm prognosis, Mrs. Calvert should be considered permanently disabled.

AR 538. The ALJ was "not persuaded" by Dr. Dye's opinion:

> There is no mention of back problems or venous insufficiency in these records. Dr. Dye does not provide clinical facts and findings upon which he based his diagnoses or conclusions regarding the claimant's ability to perform work activity. The claimant's medical record does not show a history of treatment for or complaints of back problems. The Administrative Law Judge finds that the statements of Dr. Dye are not supported by credible clinical facts and findings and, are therefore not persuasive.

AR 19.

An important factor in determining the weight to assign a treating physician's opinion is the length and frequency of the relationship. *Doyal v. Barnhart* at 762. In this case, Dr. Dye had been treating Ms. Calvert for ten years, long enough to lend a "'unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'" *Id.* (*quoting* 20 C.F.R. § 416.921(d)(2)). The Tenth Circuit has explained:

> "The treating physician doctrine is based on the assumption that a medical professional *who has dealt with a claimant and his maladies over a long period of time* will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records."

*Doyal v. Barnhart* at 762 (*quoting Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994)) (emphasis added in *Doyal*).

Dr. Dye stated that during the ten years Ms. Calvert had been his patient, she had suffered from numerous conditions. Contrary to the ALJ's assertion, Dr. Dye's medical records do mention back pain. AR 207, 208, 212. Dr. Dye also noted peripheral edema, a symptom of venous insufficiency. AR 215. Dr. Dye consistently prescribed Lasix to help control the swelling of Ms. Calvert's feet. AR 64, 207-216.

On remand, the Commissioner should reconsider the medical evidence as it relates to Dr. Dye's opinion. Further, the Commissioner should specify the weight he assigns to the opinion and why.

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. § 636 and Fed.R.Civ.P.72. Any such objections should be filed with the Clerk of the District Court by November 1st, 2011. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this 11th day of October, 2011.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE